# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOROTHY LEVEY and MOSES HYLES, )
)
Plaintiffs, )
)   Case No. 07 C 2678
v. )
)   Judge Joan B. Gottschall
CITIMORTGAGE, INC. and MARK DIAMOND, )
)
Defendants. )

## MEMORANDUM OPINION & ORDER

### I. BACKGROUND

Defendant CitiMortgage has filed a motion to dismiss Dorothy Levey and Moses Hyles'

Fourth Amended Complaint (the "Complaint"),[1] which alleges violations of the Fair Housing Act

("FHA"), 42 U.S.C. § 3601-19, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§

1691-91f. Compl. ¶ 1. Plaintiffs additionally bring a statutory claim under the Illinois Consumer

Fraud and Deceptive Business Practices Act ("ICFA"), and Illinois common law claims of

unconscionability and breach of fiduciary duty under the court's supplemental jurisdiction. *See*

Compl. Hyles' claims are brought against Mark Diamond, the individual who allegedly perpetrated

the fraud against him, and CitiMortgage, Inc., the assignee of the loan brokered by Diamond and

originally funded at closing by Delta Funding Corporation ("Delta"). Levey's claims are brought

against CitiMortgage, the reputed assignee of a loan originated by BNC Mortgage (the "BNC

Loan"). *Id.*

---

[1] CitiMortgage has filed two separate motions to dismiss, one for each Plaintiff. For the convenience of the court, however, this memorandum and order rules on CitiMortgage's motions jointly. *See* Doc. Nos. 63, 66.

In the Complaint Hyles specifically alleges that after entering into a series of loans over several years to pay various expenses he received a number of telephone calls from a representative of Diamond's firm inquiring whether Hyles wished to refinance his existing loan in order to have "extra money" to "re-do [his] bathroom and . . . kitchen." Compl. ¶¶ 27, 28. Subsequently, Diamond introduced Hyles and his wife to the mortgage lender Delta. Compl. ¶ 32. Hyles and his wife entered into a mortgage agreement (the "Mortgage") with Delta, the proceeds of which Hyles claims he never received. Compl. ¶¶ 30, 35. At an unspecified time the Mortgage was assigned to CitiMortgage, which is currently collecting on it. Compl. ¶¶ 5, 47, 83.

Levey avers that on February 20, 2002 she and her husband Dan Levey unknowingly signed papers for a mortgage loan from BNC Mortgage for $73,950 which they believed to be a debt-consolidation loan ("BNC Loan"). Compl. ¶¶ 9-10. At the closing, Levey paid a variety of fees including a "yield-spread premium" which she allegedly did not agree to. Compl. ¶¶ 12-16. Levey further states that BNC Mortgage "granted, bargained, sold, assigned, transferred or set over the Levey Mortgage to" CitiMortgage. Compl. ¶ 17.

CitiMortgage attaches various documents to its motion to dismiss which it maintains are properly before the court, and which show that Levey and her husband entered into a separate and succeeding mortgage loan in January 2003 with First National Bank of Arizona ("First National Loan"). Mot. 2, Ex. B. CitiMortgage asserts that it is the assignee of the First National Loan, not the BNC Loan that is the focus of Levey's allegations. Mot. 3, Ex. C, D.

## II. ANALYSIS

Rule 12(b)(6) allows a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion the court

must accept as true the allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (internal citation omitted). Legal conclusions, however, are not entitled to any assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct.1937, 1940 (2009). To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). However, the allegations must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be sufficient to "state a claim to relief that is plausible on its face[.]" *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556).

### A.   FHA Claim (Count V)

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling or in provisions of services or facilities therewith, because of race, color, religion, sex, familial status or national origin." 42 U.S.C. § 3604(b). Respecting mortgage loans, the FHA regulations specifically forbid discrimination "against any person in making available loans or other financial assistance for a dwelling, or which is or is to be secured by a dwelling" based on the same criteria prohibited by statute. 24 C.F.R. § 100.120.

Hyles fails to allege any facts which might be construed to state a claim against CitiMortgage under the FHA. *See generally* Compl. All of Hyles's allegations of wrongdoing are directed at co-defendant Mark Diamond and various entities with whom he was associated, not against CitiMortgage. Indeed, Hyles avers in his complaint that CitiMortgage was *not present* at the closing of the Mortgage and does not allege that CitiMortgage had any involvement at all with setting the terms of the Mortgage originated by Delta. Compl. ¶ 46(a). CitiMortgage, moreover, is referred to throughout the complaint as an assignee of the Mortgage. *See* Compl. None of Hyles' allegations, then, are sufficient to state a claim that CitiMortgage has discriminated against Hyles in "making available loans or other financial assistance for a dwelling," because Hyles has not claimed that CitiMortgage ever made him a loan. 42 U.S.C. § 3604(b).

The same reasoning applies to the BNC Loan issued to Levey, who avers that CitiMortgage was not present at the origination of the BNC Loan and is referred to throughout the complaint as an assignee.[2] Compl. ¶ 45(a).

Hyles and Levey *have* alleged that CitiMortgage discriminated against them on the basis of race by "contracting or assuming a contract" for the Mortgage and the BNC Loan because the

---

[2] In an effort to establish that it is not the assignee of the BNC Loan at issue here, CitiMortgage presented a variety of documents to the court with its motion to dismiss, including the mortgage agreement and HUD-1 settlement statement for a loan between Levey and First National Bank of Arizona (which noted a payoff to Countrywide Home Loans in an amount nearly equivalent to the amount of the BNC Loan). Though this evidence was suggestive, it was not sufficiently clear evidence of the falsity of Levey's claims to overcome the presumption on a motion to dismiss that all facts in the Complaint are true. CitiMortgage's evidence is specifically lacking because CitiMortgage failed to provide the court with a copy of the documents which assigned the First National Loan to CitiMortgage. Without a copy of that agreement (and given that the First National Loan shows a payoff to Countrywide Home Loans – not BNC), CitiMortgage is asking the court to rely on the word of its attorneys for the proposition that it is the assignee of the First National Loan. At this stage in particular, such reliance is inappropriate. Accordingly, the court will treat CitiMortgage as if it were the assignee of the BNC loan for purposes of this motion to dismiss.

"contracted" mortgages contained "terms and conditions less favorable than in mortgage loans" that CitiMortgage "contracted" from similarly-situated, non-minority borrowers. Compl. ¶ 75. While FHA regulations prohibit purchasers of loans from refusing "to purchase loans . . . or . . . impos[ing] different terms or conditions for such purchases" based on race or other impermissible criteria, Plaintiffs' allegations cannot be construed to make out such a claim because they have not pled any facts related to the sale or transfer of the loans from Delta or BNC to CitiMortgage. *See* 24 C.F.R. § 100.125. As a consequence, Hyles and Levey have also failed to allege that CitiMortgage imposed different terms or conditions on the "purchase" of the Mortgage or the BNC Loan based upon Plaintiffs' race or other forbidden criteria. Absent such allegations, Hyles and Levey have failed to state a claim under the FHA upon which relief can be granted. The court dismisses Count V of the Complaint.

## B. ECOA Claim (Count VI)

The ECOA makes it unlawful for any "creditor" to discriminate against "any applicant with respect to any credit transaction" on the basis of race and a number of other prohibited grounds. The ECOA defines a "creditor" broadly to include an assignee who "participates in a credit decision, including setting the terms of the credit," but explicitly precludes assignee liability where an assignee did not participate in a credit decision and is being sued for acts "committed by another creditor." An assignee may be found liable for acts committed by another creditor, however, if it "knew or had reasonable notice of the act, policy, or practice that constituted the violation before becoming involved in the credit transaction." 12 C.F.R. § 202.2(*l*).

As discussed in Section A above, the Complaint plainly states that CitiMortgage was not present at the origination of the Mortgage or the BNC Loan and is being sued as an assignee. *See*

Compl. ¶¶ 45, 46. Plaintiffs have additionally failed to allege any facts accusing CitiMortgage of any involvement whatsoever in the origination of the Mortgage or the BNC Loan. Plaintiffs' allegations are thus insufficient to establish that CitiMortgage was a creditor "who participate[d] in the credit decision" under ECOA regulations. *See* 12 C.F.R. § 202.2; *cf. Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251 (D. Mass. 2008) (finding assignee a creditor under the ECOA regulations where it set policies affecting the terms of mortgage loans at their origination).

Absent allegations that CitiMortgage participated in setting the terms of the Mortgage or the BNC Loan, Plaintiffs must show that CitiMortgage "knew or had reasonable notice of the act, policy, or practice" committed by Mark Diamond or BNC that allegedly violated the ECOA. Nowhere in the complaint do Hyles or Levey allege that CitiMortgage "knew" of the ECOA violations allegedley committed by Mark Diamond or BNC when it purchased or was assigned either loan. Plaintiffs must therefore allege that CitiMortgage had reasonable notice of the "act, policy, or practice" underlying the origination of the Mortgage or the BNC Loan to state a claim under the ECOA.

In their response Plaintiffs appear to argue that allegations in the Complaint support two theories of reasonable notice to CitiMortgage of the wrongdoing that allegedly occurred at the origination of the Mortgage and the BNC Loan. First, Hyles contends that paragraph 36 of the Complaint (which cites to Compl., Ex. 14, "HUD-1 Settlement Statement") indicates that a "yield spread premium" was paid to Delta, and that paragraphs 34 and 35 of the Complaint state that Hyles did not receive the $23,208.29 payment indicated on the HUD-1 statement (Compl., Ex. 14). As a result, Hyles contends, the malfeasance at the closing of the Mortgage was "obvious on the face of the loan documents." Resp. Br. 8. Yet even with this gloss, Hyles's statements cannot be construed

to allege any facts consistent with CitiMortgage having reasonable notice of an ECOA violation occurring at the Mortgage closing.  ECOA prohibits differential treatment by creditors *on the basis of race*, or membership in another protected class.  Hyles has not alleged that any portion of the loan documents can be construed to have given reasonable notice to CitiMortgage that the Mortgage terms were determined by Diamond and Delta utilizing any of ECOA's forbidden discriminatory criteria.

Levey presents similar evidence in an effort to sustain a reasonable notice theory and her allegations are lacking for the same reasons Hyles' are.  *See*  HUD-1 Statement (Compl., Ex. 7).  Hyles and Levey's first "reasonable notice" theory therefore fails.

Second, Hyles and Levey argue that paragraphs 74-87 of the Complaint (summarizing several general longitudinal studies and reports showing racial differentials in Chicago's rates of foreclosure, and the mortgage terms offered to its residents) are sufficient to state a claim against CitiMortgage under the ECOA.  Resp. Br. 9.  Plaintiffs' response brief does not cite a single case where general longitudinal studies support a finding of reasonable notice to an assignee creditor of an ECOA violation at origination, nor can this court locate one.  *See id.*  Moreover, even assuming *arguendo* that these studies were specific enough potentially to notify CitiMortgage of an ECOA violation regarding the Mortgage, Plaintiffs have not alleged that CitiMortgage knew or reasonably should have known of the studies or the facts underlying them.  *Iqbal* teaches that a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1940.  Here, where liability hinges on reasonable notice of a violation by another creditor, Plaintiffs do not allege any facts related to the manner in which these studies were to have come to the attention of CitiMortgage.  Plaintiffs'

response brief implies that the very existence of these studies, or the racial disparities that they allegedly reflect, should be enough to give CitiMortgage reasonable notice of the specific wrongdoing at the origination of the Mortgage or the BNC Loan. The court declines to credit these attenuated pleadings and finds that they insufficiently allege that CitiMortgage had reasonable notice of an ECOA violation related to the Mortgage or the BNC Loan.

Finally, the allegations Plaintiffs make by citation to these studies cannot constitute reasonable notice because their findings are too general; none of the studies may be construed to have reasonably notified CitiMortgage of the type of wrongdoing alleged at the origination of the Mortgage or the BNC Loan.

The Complaint cites three separate studies: (1) the National Delinquency Survey of the Mortgage Brokers Association (showing that in 2002 the nine predominantly African-American neighborhoods in Chicago had a foreclosure rate of 41%, 35 times the national average for non-minority borrowers) (Compl. ¶ 78); (2) a Woodstock Institute Study (stating that in predominately African-American Chicago neighborhoods 34.5% of the mortgages were subprime and likely to fail) (Compl. ¶ 80); and (3) an article by the Chicago Reporter (finding that in 2006 African-American and Latino homeowners in the Chicago area received nearly 50% of "high-cost" loans) (Compl. ¶ 81).

For ECOA liability to reach to an assignee, a plaintiff must allege reasonable notice of violative acts by "another creditor." None of these studies focus on any of the creditors – Mark Diamond, Delta Funding, BNC – who were involved in the origination of the Mortgage or the BNC Loan and so cannot be construed to have provided the kind of notice to CitiMortgage that ECOA demands in order to extend liability to an assignee. *Cf. Barber v. Fairbanks Capital Corp.*, 266 B.R.

309 (Bankr. E.D. PA. 2001) (refusing to extend assignee liability under ECOA where plaintiff did not allege assignee had knowledge or reasonable notice of ECOA misconduct at the mortgage origination).

Hyles and Levey have failed to state a claim under the ECOA; Count VI of the Complaint is dismissed.

### C. Illinois Common Law Unconscionability (Count I)

CitiMortgage argues that Hyles' common law unconscionability claim should be dismissed because Hyles has not alleged facts sufficient to establish that the Mortgage (1) was "so one-sided that only one under delusion would make [it] and only one unfair and dishonest would accept [it]," or (2) that "some impropriety during the formation of the contract . . . deprived one party of meaningful choice." Mot. 4. The court disagrees and denies CitiMortgage's motion to dismiss Count I of the Complaint, finding that Hyles has pled facts sufficient to support a finding of unconscionability.

In Illinois, a finding that an agreement is unconscionable "may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006). Substantive unconscionability "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Kinkel*, 857 N.E.2d at 267. "Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice." *Id.*

A finding of procedural unconscionability requires a court to consider "the circumstances surrounding the transaction including the manner in which the contract was entered into, [and] whether each party had a reasonable opportunity to understand the terms of the contract." *Keefe v.*

*Allied Home Mortg. Corp.*, No. 5-07-0463, 2009 WL 2027244 (Ill. App. Ct. 2009) (citing *Frank's Maint. v. Eng'g, Inc.*, 408 N.E.2d 403, 409-10 (Ill. App. Ct. 1980)). Moreover, a finding of unconscionability may turn on a showing of acts of bad faith "such as concealments, misrepresentations, [or] undue influence." *Taylor v. Bob O'Connor Ford, Inc.*, No. 97-C0720, 2000 WL 876920, at *3 (N.D. Ill. 2000); *see also Mitchem v. Am. Loan Co., Inc.*, No. 99-C1868, 2000 WL 290276 at *4 (N.D. Ill. 2000) (unconscionability doctrine is "closely allied . . . to fraud and duress, [and] is designed to prevent overreaching at the contract-formation stage") (*citing Orig. Great Am. Choc. Chip Cookie v. River Valley*, 970 F.2d 273, 281 (7th Cir. 1992)). Here, Hyles has alleged that he is illiterate, and so did not and could not read the documents that he signed, and, furthermore, that neither Diamond nor the agent for Delta explained the contents of any of the documents he signed at the closing of the Mortgage. Additionally, Hyles has attached evidence to the Complaint showing that at least one of the closing documents was missing required information. Compl. ¶¶ 4, 33, Ex. 13. And, finally, Hyles avers that he never received the $23,208.29 that the closing documents state that he was paid in cash at closing. All of these statements if true are sufficient to sustain a cause of action for unconscionability in Illinois because they allege concealments and misrepresentations and show that Hyles may not have "had a reasonable opportunity to understand the terms of the contract." *Keefe*, 2009 WL 2027244 at *4.

Because the court finds that Hyles has made allegations sufficient to show procedural unconscionability, and such a showing is sufficient to plead that a contract is unconscionable in Illinois, the court declines to opine as to whether Hyles has adequately pled that the Mortgage was substantively unconscionable.

Levey's allegations of procedural unconscionability, however, are inadequate. Levey elliptically argues that her unconscionability claim is well pled because the Complaint states that she has difficulty reading documents because of her health issues and that her husband was very sick when he entered into the BNC Loan. Levey additionally alleges that she never "received the proceeds of the approximately $100,000 loan." Resp. Br. 10; Compl. ¶¶ 3, 19.

Levey cites no authority for the proposition that general averments of sickness or difficulty reading documents sufficiently state a claim that a contract was procedurally unconscionable. Moreover, Levey's allegation that she never received "approximately $100,000" from the proceeds of the BNC loan is flatly contradicted by the BNC Loan HUD-1 Statement (which Levey has attached to the Complaint as Exhibit 7), which shows that Levey was to be paid only $54.85 of the nearly $74,000 loan issued by BNC; the majority of the proceeds were distributed to pay off Levey's previous mortgages. *See* Compl., Ex. 7, Lns. 104-05, 303. The closing document that Levey submitted with the Complaint, then, contradict her assertion of fraud. *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999) ("A plaintiff may plead [herself] out of court by attaching documents to the complaint that indicate . . . she is not entitled to judgment."). The court, therefore, cannot construe her claim to allege the bad faith or fraud which would bear on an unconscionability analysis. *Cf. Mitchem v. Am. Loan Co., Inc.*, No. 99-C1868, 2000 WL 290276 at *4 (unconscionability is closely related to fraud).

Count I of the Complaint is dismissed only as to Levey.

**D.      ICFA Claim (Count II)**

To hold an assignee liable under the ICFA Plaintiffs must allege that CitiMortgage "actively and directly participated in the fraud" alleged in the Complaint. *Jackson v. South Holland Dodge,*

*Inc.*, 726 N.E. 2d 1146, 1155 (Ill. App. Ct. 2000). Unambiguous Illinois precedent limits ICFA claims to "conduct that defrauds or deceives consumers or others" and "does not provide a cause of action against those *who knowingly receive benefits from the person committing the violation*." *Zekman v. Direct Am. Mktrs., Inc.*, 692 N.E.2d 853, 859 (Ill. 1998) (emphasis added); *see also Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 735 (N.D. Ill. 2005) (citing *Zeckman*, 692 N.E.2d); *Mfrs. & Traders Trust v. Hughes*, No. 99-C5849, 2003 WL 21780956, at *2 (N.D. Ill. 2003).

Hyles and Levey have averred that CitiMortgage was not present at the closing of the Mortgage or the BNC Loan and have alleged no facts which may be construed to allege that CitiMortgage was involved in the alleged fraud at the origination of either contract. Compl. ¶¶ 45(a), 46(a). Consequently, Plaintiffs have not pled that CitiMortgage "actively and directly" participated in the alleged fraud and Count II of the Complaint is therefore dismissed. *Jackson*, 726 N.E. 2d at 1155.

### E.     Inducement to Breach Fiduciary Duty (Count III and IV)

Hyles and Levey maintain that CitiMortgage is liable for inducing their respective mortgage brokers to breach their fiduciary duty to Hyles and Levey. An assignee may be liable for inducement of the breach of another's fiduciary duty only if a plaintiff demonstrates that the defendant (1) colluded with a fiduciary in committing a breach; (2) knowingly participated in or induced the breach of duty; and (3) knowingly accepted the benefits of the breach. *See Regnery v. Meyers*, 679 N.E.2d 74, 80 (Ill. App. Ct. 1997). Hyles and Levey have not alleged facts sufficient to meet any of these legal standards.

With respect to the first two requirements, Plaintiffs' pleadings are insufficient for the same reasons their ICFA claims were inadequate: they have (1) averred that CitiMortgage was not present

at the origination of the Mortgage or the BNC Loan and (2) failed to allege that CitiMortgage colluded with Diamond, Delta or BNC, or otherwise participated in the alleged breach. Compl. ¶¶ 45(a), 46(a).

As for the third requirement (that CitiMortgage knowingly accepted the benefits of the breach), Hyles contends that wrongdoing was obvious from the face of the loan documents because "$11,458.00 was paid to Delta Funding for a 'Loan Discount' (Compl., Ex. 14, ln. 802) and "$1,010.00 was paid to OSI Financial for [the] 'Mortgage Broker Fee.'" Resp. Br. 8. The Complaint alleges that these payments represent an "excessive" "yield-spread" premium because "Mark Diamond did not perform" his fiduciary duty, and because Hyles never received the $23,208.29 in cash reflected in the closing documents. Compl. ¶¶ 34, 35.

None of these claims sufficiently allege that CitiMortgage knew of the breach of fiduciary duty because (1) the payments to Diamond and Delta listed on the face of the loan document are not illegal, and so cannot be found to have apprised CitiMortgage of wrongdoing and (2) CitiMortgage would be unable to deduce from the face of the loan documents – which list a cash payment to Hyles – that Hyles never received the payment. *See* Real Estate Settlement Procedures Act Statement of Policy 2001-1 [hereinafter RESPA Stmt. of Policy] (yield-spread premium payment is not "per se legal or illegal") .

For her part, Levey alleges that she paid an assortment of fees amounting to approximately $2500 (including a $369.75 "yield spread premium") and that she never received the "proceeds of the approximately $100,000 loan." Compl. ¶¶ 12-14, 19. As discussed in Section C above, the HUD-1 statement explains how the "$100,000" was dispersed by showing that Levey was only to be paid $54.85 of the nearly $74,000 loan issued by BNC, with the majority of the proceeds

distributed to pay off the Levey's previous mortgages. *See* Compl., Ex. 7, Ln. 104-05, 303. And, in any case, CitiMortgage could not be expected to know from the face of the loan documents that listed payments were not in fact made. As for the fees Levey paid at closing, they are not illegal and not alleged to be illegal, and so cannot be found to have apprised CitiMortgage of the wrongdoing Levey alleges occurred at the BNC Loan origination. *See* RESPA Stmt. of Policy (yield-spread premium payment is not "per se legal or illegal").

Counts III and IV are dismissed.

### III. CONCLUSION

CitiMortgage's Motion to Dismiss is granted in part and denied in part; Counts I-III and V-VI of the Fourth Amended Complaint are dismissed as to Plaintiff Dorothy Levey and Counts II and IV-VI are dismissed as to Moses Hyles. Count one of the Complaint remains against CitiMortgage, but only as to Moses Hyles.


ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 10, 2009